**LIVEUNIVERSE, INC., a California corporation, Plaintiff—Appellant,**

v.

**MYSPACE, INC., a Delaware corporation, Defendant—Appellee.**

No. 07–56604.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 12, 2008.*

Filed Dec. 22, 2008.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Daryl Marc Crone, Baker Marquart Crone & Hawxhurst LLP, Los Angeles, CA, John L. Fitzgerald, Esq., Pinnacle Law Group, San Francisco, CA, for Plaintiff–Appellant.

David R. Singer, Esq., Richard Stone, Esq., Hogan & Hartson, LLP, Los Angeles, CA, for Defendant–Appellee.

Before: PREGERSON and D.W. NELSON, Circuit Judges, and SINGLETON,** Senior District Judge.

MEMORANDUM ***

█ LiveUniverse, Inc. ("LiveUniverse") appeals the district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) of its monopolization and attempted monopolization claims under § 2 of the Sherman Act, as well as its state-law unfair business practices claim. Because

** The Honorable James K. Singleton, United States District Judge for the District of Alaska, sitting by designation.

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

LiveUniverse's amended complaint does not sufficiently allege exclusionary conduct or causal antitrust injury, we affirm the district court's dismissal for failure to state a claim.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we review de novo the district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1046 (9th Cir. 2008). "All allegations of material fact in the complaint are regarded as true and construed in the light most favorable" to the plaintiff. *Glen Holly Entm't, Inc. v. Tektronix, Inc.,* 352 F.3d 367, 368 (9th Cir.2003).

To state a monopolization claim under § 2 of the Sherman Act, LiveUniverse must sufficiently allege that MySpace "(1) possessed monopoly power in the relevant market, (2) wilfully acquired or maintained that power through exclusionary conduct and (3) caused antitrust injury." *Metro-Net Servs. Corp. v. Qwest Corp.,* 383 F.3d 1124, 1130 (9th Cir.2004). The parties do not dispute the district court's finding that "LiveUniverse sufficiently alleges that MySpace has monopoly power in the relevant market" of internet-based social networking websites. LiveUniverse has failed, however, sufficiently to allege either exclusionary conduct or causal antitrust injury.

"To safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct.*" *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP,* 540 U.S. 398, 407, 124 S.Ct. 872, 157 L.Ed.2d 823 (2004). The conduct element requires "the use of monopoly power to foreclose competition, to gain a competitive advantage, or to destroy a competitor." *Image Technical Servs., Inc. v. Eastman Kodak Co.,* 125 F.3d 1195, 1208 (9th Cir.1997) (internal quotation marks omitted).

LiveUniverse's exclusionary conduct claim is predicated on MySpace's "refusal to deal" with LiveUniverse. "[A]s a general matter, the Sherman Act does not restrict the long recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *Trinko,* 540 U.S. at 408, 124 S.Ct. 872 (internal quotation marks omitted); *see also Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 600, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985) ("[E]ven a firm with monopoly power has no general duty to engage in a joint marketing program with a competitor."). This right, however, is not unqualified, and "[u]nder certain circumstances, a refusal to cooperate with rivals can constitute anticompetitive conduct and violate § 2." *Trinko,* 540 U.S. at 408, 124 S.Ct. 872.

LiveUniverse contends a refusal-to-deal claim does not require "an affirmative decision or agreement to cooperate" between competitors. LiveUniverse is mistaken. The *Trinko* court highlighted three factors it found significant to *Aspen Skiing's* "limited exception," the first of which was the "unilateral termination of a voluntary (*and thus presumably profitable*) course of dealing [which] suggested a willingness to forsake short-term profits to achieve an anticompetitive end." *Id.* at 409, 124 S.Ct. 872. This court has since recognized the narrow scope of the refusal to deal exception, which requires, *inter alia,* "the unilateral termination of a voluntary and profitable course of dealing." *MetroNet Servs.,* 383 F.3d at 1132. LiveUniverse has failed to allege either a voluntary arrangement between it and MySpace, or that any such arrangement was profitable to MySpace. *See Trinko,* 540 U.S. at 409, 124 S.Ct. 872.

LiveUniverse's only allegation is that, before MySpace redesigned its platform, individual users were able to link to content on vidiLife.com. Though this may indicate a prior course of dealing *between MySpace and its users*, nothing in the complaint suggests an agreement, or even an implicit understanding, *between MySpace and LiveUniverse* regarding the functionality of embedded links.

Even if we were to assume a voluntary course of dealing, LiveUniverse has failed to allege that it was profitable to MySpace, such that MySpace's conduct was contrary to its short-term business interests. *See Trinko*, 540 U.S. at 409, 124 S.Ct. 872; *MetroNet Servs.*, 383 F.3d at 1132 (holding that Qwest's cancellation of its prior course of dealing was not an impermissible refusal to deal because "Qwest was not forsaking short-term profits ... but rather was attempting to increase its short-term profits"). LiveUniverse has therefore failed to allege exclusionary conduct, and the district court properly dismissed its complaint.

■ LiveUniverse's failure to allege causal antitrust injury, which "is an element of all antitrust suits," *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421,1433, 1445 (9th Cir.1995), serves as an independent basis for dismissal. Antitrust injury is injury "of the type the antitrust laws were intended to prevent," *Glen Holly*, 352 F.3d at 372, which means harm to the process of competition and consumer welfare, not harm to individual competitors, *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 901 (9th Cir.2008). LiveUniverse's allegation that MySpace's conduct in disabling links on MySpace.com to other social networking websites reduces consumers' choices in the relevant market, thereby diminishing "the quality of consumers' social networking experience," falls short. LiveUniverse does not explain how MySpace's actions *on its own website* can reduce consumers' choice or diminish the quality of their experience on *other* social networking websites, which is the relevant market. There is no allegation that MySpace has prevented consumers from accessing vidiLife.com (or any other social networking website). Indeed, it would be impossible for MySpace to do so: any consumer desiring such access need only type "vidiLife.com" into the address bar of his or her web browser, or into a search engine such as Google. All MySpace has done is prevent consumers from accessing vidiLife.com *through MySpace.com*. Consumers remain free to choose which online social networks to join, and on which websites they upload text, graphics, and other content. LiveUniverse's failure to allege antitrust injury serves as an independent ground on which we affirm the decision of the district court.

■ A claim for attempted monopolization requires allegations of anticompetitive conduct and antitrust injury. *See Cascade Health*, 515 F.3d at 893; *Image Technical Servs.*, 125 F.3d at 1202. As discussed above, LiveUniverse failed to allege anticompetitive conduct and antitrust injury. Because attempted monopolization requires pleading these same elements, LiveUniverse's claim necessarily fails.

LiveUniverse's final claim is for unfair competition under California Business and Professions Code § 17200. Where, however, the same conduct is alleged to support both a plaintiff's federal antitrust claims and state-law unfair competition claim, a finding that the conduct is not an antitrust violation precludes a finding of unfair competition. *See, e.g., Carter v. Variflex, Inc.*, 101 F.Supp.2d 1261, 1270 (C.D.Cal.2000) ("Thus, in light of the Court's findings under the Sherman Act, the Court finds that Variflex has failed to produce sufficient evidence to support its California un-

fair competition claim."); *Chavez v. Whirlpool Corp.*, 93 Cal.App.4th 363, 375, 113 Cal.Rptr.2d 175 (2001) ("If the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers.")

LiveUniverse concedes that its "cause of action for statutory unfair competition relies on its allegations of monopolization and attempted monopolization." Because LiveUniverse fails to state a claim under the Sherman Act, it also fails to state a claim under § 17200.

For the foregoing reasons, LiveUniverse has failed to state a claim for monopolization, attempted monopolization, or unfair competition. The decision of the district court is affirmed.

**AFFIRMED.**